Okay, next case before the court is Chemsol, LLC v. United States Case number 131402, arising out of a decision of the Court of International Trade Okay, next case before the court is Chemsol, LLC v. United States  Okay, Mr. Semel, is that how you pronounce your name? Yes, Your Honor. All right, do you want three minutes for a rebuttal? Yes, please. Okay, you may begin. Thank you, Your Honor. May it please the Court, Russell Semel, on behalf of the appellant. I'm looking, and this is going to be a question for whoever argues for the government, too, probably Ms. Burke. I'm looking at page 47A of the appendix. You don't need to look. The last date shown is 3-28-10, four years having elapsed since the date of the last entry. What actions have been taken by anyone in the case to keep everything from becoming moot? Becoming moot in what way, Your Honor? Well, auto-liquidating at the end of four years. Well, as I understand it in the government's response brief mentioned, the entries have all liquidated affirmatively at this point. They liquidated about, I believe it was four days after we filed our initial brief in this case. So some of the entries have auto-liquidated at the entered rate, but at this point they've all affirmatively liquidated. But as was recognized in Ford 2012, the Motor Co. v. U.S. 2012 decision on which we rely heavily, that doesn't make a difference for the purpose of this case because jurisdiction must be assessed at the time of filing. And at the time we filed the complaint, they hadn't been liquidated. Well, supposing we reject all your other arguments, we find that Ford is not on point, everything else, where are we left? Well, we're left in the same place, Your Honor. There are only two jurisdictional facts here. And in fact, Your Honor, recognize this in 2011 in another Ford Motor Co. decision. There are only two jurisdictional facts here, and that is whether the entries were liquidated at the one-year mark, after the anniversary date of the entries, and that's Section 504A, ordered by Section 504A. And the second fact is whether they were liquidated at the time we filed this case. And it's undisputed, as it was in Ford 2012 and in Ford 2011 as well in the Court of Administrative. Let me just make that clear, that's a CIT opinion. Yes, Your Honor, in the CIT, of course. That those are the only two jurisdictional facts, and where those are undisputed, we have the right to seek a declaratory judgment on deemed liquidation. I don't disagree with you in terms of the jurisdiction, but just because I'm curious, did you file a protective action under 1581A? The protests haven't been denied yet. The protests, we did, yes, Your Honor. You did protest them. Right, we haven't filed a case. We filed protests. Right. And they're still being considered. Okay. All right, so your conclusion as to why that activity or why those efforts would be inadequate is what? It would be inadequate because we, at the moment, have a right to repose that Congress has recognized. The legislative history of Section 1504 is that deemed liquidation is meant to benefit importers by providing a sense of finality and a sense of certainty in our contingent obligations to customs, to the government. The Court recognized this in its Cherry Hill textiles decision back in 1997, and Your Honor, again, in the Court of International Trade in 42011, recognized this as being an important right and something that Congress. Was there a dispute as to whether or not customs extended liquidation? There were four counts in Ford, Your Honor. Well, no, no. May I ask you a question? Yes. Was there a dispute as to whether or not customs had extended liquidation? For some of the counts, Your Honor. Is that disputed in this case? No, in this case, we don't dispute that there were extensions, there were notices of extension. But, Your Honor, that goes to the court. Where does it say that liquidation was extended and that notice was issued? Count four of the complaint, Your Honor. In the opinion, rather, it is. I'll tell you exactly. Unfortunately, I'm looking at the slip opinion. We do refer to the recorded pages in our brief. I can point it out to you specifically once I find it, but the court does detail all of the Ford's four counts. You say the fact pattern of legalism is important in your brief. The fact pattern of legal issues now before this court are all but identical to Ford in every material way. Yes. That's correct, Your Honor. And for purposes of this case, for this motion right now, for these appeals, the jurisdictional fact patterns and legal issues are identical in every way. The fact that the entries had not been deemed liquidated within one year and that customs hadn't liquidated the entries within one year and that customs hadn't liquidated the entries by the time we filed, those are the only two jurisdictional facts and we're only looking at jurisdiction right now. Is it your view that anytime you dispute the propriety of an extension within the four-year period that you can come to the court under eye? That is the effect, yes. It is. The propriety of the extension, however, goes to the merits. For the purposes of these appeals, the extensions are irrelevant. The fact is those two jurisdictional facts are undisputed. The extensions are evidence of the fact that customs is withholding our right to repose, the right that is embodied in the statute according to the legislative history, according to Cherry Hill and according to your Honor. But the right to extend is also embodied. Well, that's a right to extend that needs to be – the reasons for those extensions need to be demonstrated on the merits. And for the purposes of these appeals, the court must accept everything that we say in our complaint – everything we allege in our complaint is true. And we allege that customs did not have the information or had all of the information available to it, which is the justification for extension under 504B, and that must be taken as true for the purposes of these appeals. Isn't there a line of cases that expressly limit the bounds of residual jurisdiction under 1581I that came out of this court? Yes, Your Honor. I believe you're referring to the line that – So in your brief, you say that the CIT's opinion below is in remarkable direct contrast to an opinion – and that was written by Judge Posey, the denominator quote from your brief – is in remarkable direct contrast to an opinion of then-Judge Posey 13 years ago. Yes, sir. But – Now 14. Now 14 years ago. But Puget Sou was decided prior to that line of cases coming down on residual jurisdiction, coming down from this court. How is Judge Posey's change remarkable, given that he's bound by steric assumption? Is Your Honor referring to the lines – the available and adequate directions coming from that court? Among others, I'm talking about the change in the law over 13, 14 years dealing with I jurisdiction. The CIT, as you very well know, and I certainly do, was under the belief that I was much broader than this court determined. Well, the law hasn't changed that much, Your Honor. As you said, you're well aware in 42011 you cited – or you quoted, rather, Puget Sou for the three – for the proposition that there are three grounds by which an importer may proceed in order to bring about a deemed liquidation argument. And one of those, the final one, is that an importer may proceed under I where there has been no affirmative liquidation and the time for affirmative liquidation has passed. So that still is good law. And again, a lot of this obscures the point that for the purposes of these appeals, all that matters are those two facts, that the entry has not been liquidated affirmatively and that the entry – or at the time of filing nor had it been after one year. So it's still good law in this case, as the Court and the Court of International Trade and you yourself, Your Honor, have said. But – You can make an argument about a case I wrote below. You cannot make an argument to this court or to me as a judge of this court about the nature of anything I've said. Well, this court – the authority coming out of this court has been all but affirmative on that issue because the line that – or the statement that – or the statement that residual jurisdiction cannot be invoked where another basis of jurisdiction is available or adequate came from this court's decision back in the 80s. But that came in the context of an importer's failure to avail itself of already available administrative remedies, remedies for which the predicate existed, particularly whether protest deadlines were allowed to elapse, administrative protest deadlines, or failure to participate in administrative proceedings. And it's very simple here. And 42012 explains this, even if the holding itself wouldn't. The logic is – the logic is sound, that the entries had not been liquidated at the time the case was filed, and therefore there were no other bases of jurisdiction available. And additionally, with regards to the adequacy prong of that statement, Cherry Hill, U.S. v. Cherry Hill in 1997, recognized the importance, the significance of the release that Congress – of the right to repose that Congress meant to provide when it passed 1504. And again, in 2003, Section 1504 was amended to bring drawback entries into the fold to provide the same right of repose that was already provided to consumption entries and to reconciliation entries. So I would argue, no, Your Honor, that the law has not – has not changed on that point. And the law is very, very simple here and very clear. And – But if ultimately on the merits, in connection with your current protest, you were able to establish that the extensions themselves were inappropriate because there was – the predicate didn't exist, because they had the information they needed, wouldn't that give you all the relief to which you'd be entitled? In other words, wouldn't you have them – the liquidation at the original rate rather than at the new rate that the government establishes? In an A case, Your Honor, or in this case as well? In an A case. It would give us – it would give us that, but we continue to be harmed right now, and we will continue to be harmed by the fact that we don't have the certainty that Congress intended to give us. That would require – an A case always deals with – the only relief available in an A case is reliquidation of entries and a duty refund. This is an I case. So the government is supposed to conduct a fraud investigation? Within one year, Your Honor. That is what Congress intended. That's what Congress instructed. So we're just writing out the extension provisions? No, we're not. We are asking the Court of International Trade to determine whether an extension was appropriate in this case, or would be appropriate in any case of this sort. But that's – again, I believe that returns to the merits. When we talk about anything to do with an extension, that's something for the Court to decide on motion for summary judgment or after a trial. At this point, Section 1504A recognizes that after one year, if Customs has not liquidated under Section 1500, and they have not liquidated by the time we file this case, we have the right to at least be heard on the merits. You're into your rebuttal. Thank you, Your Honor. Ms. Burke, please start out with the initial question I asked about liquidation and whether this case is moving. Because – I assume the government did liquidate in some fashion, or – We did. Around May of 2013, right after the Court of International Trade decision, and maybe right around the time of the notice of appeal was filed, Customs liquidated, I think, all of the entries. It may have extended into June. But because it's my understanding there have been timely protests, and so no, the case is not moved. If there hadn't been timely protests, then it would be. Okay. Is it your view that Customs can do these extensions whenever it feels like it? No. All right. So what is the mechanism to challenge Customs extensions? The mechanism to challenge Customs extensions has always been through a protest, and that's how the Court of International Trade and this Court have always adjudicated those claims. So you've got to wait the whole four years. Yeah, and you don't necessarily have to wait all four years because it doesn't necessarily take all four years. And, you know, in this case it might not have taken all four years if the entries hadn't been tied up because of this case. There is evidence, and I don't want to get too much into the merits, but there is evidence just from the complaint that Customs was prepared to act before the four years was up. But it continued issuing extensions because, in Customs' view, it doesn't have the authority to liquidate any entries while the case is pending before the Court of International Trade. Just out of idle curiosity, was the liquidation at the original rate? At the rate that the goods were entered? Declared, yeah. No. No. I believe that the numbers are confidential, but no, not at all. It was much higher. So, again, I mean, because it's conceivable that, you know, if someone's business can't handle the possibility of a substantially higher rate, that four years would be enough time to put an importer out of business, right? I mean, we've seen it happen before. Well, during that time, they wouldn't be paying the additional rate. But they would know that the threat of every additional import has that rate hanging over its head. That's correct. But Section 1504, as my opposing counsel mentioned, it was crafted specifically to try to eliminate uncertainty. And it did. It gives Customs one year to liquidate entries, and then by statute it gives it an additional three years. I mean, the four years is actually in the statute. It's not in the regulation. It's in the statute. And that's the scheme that Congress thought was an appropriate period of time to give Customs the ability to do what it needed to do and to give the importers a finite amount of time so it knew when its liability would attach. And it's not really four years. It's year to year to year to year. Correct. So it could be shorter. Do we have any statistical numbers as to how many times Customs invokes the right to extend? I mean, not firm statistical numbers. I did just ask this question of Customs and was advised that it happens very infrequently, less than 5%. That four years happens infrequently or any extensions? Any extensions. And you can kind of tell based upon the number of cases that exist that it doesn't happen all that much because there's only a handful of cases in this court and maybe double that number in the Court of International Trade. Cases where? Where an extension is challenged under 1581A. Okay. I'd like to talk just a little bit about Ford. Ford has three holdings. The first holding is Ford reverse, the Court of International Trade's dismissal of claims that concern post-complaint activity. And really that's the bulk of the decision. And that's where the Court applied the time of filing rule. The time of filing rule doesn't apply to the rest of the decision. Then there are two other holdings that appear on the very last page. The second holding is that this Court reversed the Court of International Trade's prudential decision that there was no case or controversy because in this Court's view, Ford had actually not conceded that certain extensions had happened. And then in the very last paragraph, the Court vacates the Court of International Trade's, again, discretionary dismissal of claims concerning entries that hadn't been protested yet. Those are the entries that are like these entries. The rest of the case has nothing to do with these entries. There is no specific holding about the Court's jurisdiction over those entries because it didn't really have to address it because it wasn't before the Court. The Court of International Trade had exercised jurisdiction. No one had really challenged it. Really all the Court was talking about was the prudential dismissal. Then the Court, no fewer than four times, states that the most important thing about the case is that Ford alleged, and the Court found, that no extensions had been issued. And I want to be careful about what I say because the merits of Ford are currently on remand, so I want to be clear that it was the Court that found that the allegation was that no extensions had been made. And it was the Court, this Court, that found that to be a very meaningful distinction. And it talks about that distinction on page 1327 where it says that section 1514A states that the actions of CBP in any entry are final unless protested. It makes no endorsement of the administrative protest system for importers' claims that CBP unlawfully failed to act. Well, what's the difference between no extension having occurred and a completely improper extension having occurred? Well, I mean, frankly, before Ford, we would have argued that there is no distinction. And probably we did argue that there is no distinction in Ford. But now that this decision exists and the Court found the distinction meaningful, I think the distinction that makes sense to me is that 1581A and 1581I are not equal remedies. I kicks in, the way I think about it anyway, I kicks in if something has gone wrong. So you are supposed to use A and you're supposed to use A. I kicks in if something is unavailable. Right, so that's true. In this particular case, if the four years goes by and Customs just fails to liquidate at the end of the four years and then the entries truly do deem liquidate at four years, the Customs hasn't done anything. That is a failure to act such that a party might have an I claim because something has gone wrong. So it's one way in which I can kick in. So that's the way I think of the distinction. But under your theory, though, it really could be true that Customs could extend every single liquidation for four years with no explanation, regardless of the facts and circumstances, and it could only be challenged at the end of the four years. That's true. I mean, worst-case scenario, that could happen. And I don't think it's happened quite that badly, but there's certainly been a couple of cases where this court has found that there has been an undue delay, that the four years has gone by and Customs didn't do enough during the four years. Yes, it could happen. But, I mean, again, that's what the statute provides for. And the alternative is incredibly unwieldy. It would mean that at the end of year one, after year one, day one, a party like ChemSol could file an action for a declaratory judgment and making the same challenges that they make here. And then if they lose, then Customs continues and maybe issues a second extension, and then year two, day one, the same thing happens. And then you have an agency that is completely hamstrung and unable to do what the statute tells it to do. Okay. Okay, for these reasons, we respectfully request that the Court of International Trade Judgment be sustained. You have just over two minutes. Thank you, Your Honor. The court asked why there's a difference, why this would be distinguished from Ford. The opinion below tries to draw a distinction, and opposing counsel, a distinction between a failure to act period within the one year and an invalid extension. I would say again that this goes to the merits. There is still agency action unlawfully withheld, and that's recognition of the liquidation status, the deemed liquidation status of the entries. Whether they are deemed liquidated because the extensions were faulty or whether they're deemed liquidated because no action was taken at all within the one-year period is a matter for the merits. Once we secure the court's jurisdiction, recognizing an agency action unlawfully withheld, we can address that issue. Counsel also noted that only 5%, about 5%, or she believes liquidations are extended. I think that addresses the argument that Your Honor, or the question Your Honor asked earlier about whether any, or the concern that you expressed, whether just any party can come in and begin to hamstring customs in its investigations. Customs generally has the ability to liquidate entries. 19 out of 20 times, customs can liquidate entries within one year, and the extensions aren't even necessary. In addition, customs is not simply entitled to an extension. Customs needs to give us a reason why, the importer a reason why it needs to extend liquidation on the entries. They gave you a reason, didn't they, Your Honor? Yes, Your Honor, they did. Well, it's disputed whether they did. It was a summary reason in the notice. The notice only said customs extension reason one, or something similar to that. We note that in our brief. But that reason… Reason one isn't just a number, right? I mean, there's an explanation. I presume there would be, Your Honor. There would be fraud. I'm sorry? That reason one would be fraud. If reason one is fraud, that would improve our case once this is down below, because fraud or an investigation in general is not a valid reason for an extension under Section 1504. In Ford 2012, there's a passage, and if you'll allow me to read this real quickly, that as of a date certain customs had unlawfully failed either to timely liquidate the entries at issue or to extend the time for liquidation, and that Ford was thus entitled to declaratory judgment of liquidation as a matter of law. That fact pattern, that jurisdictional fact pattern, is what gave Ford, in that case, why Ford was able to invoke the Court's residual jurisdiction over every single time. The jurisdictional facts are exactly the same here. And the law of the circuit, and as the Court below has understood it, dictates that the Court accept this case under its residual jurisdiction, and this case presents a good opportunity to remind the Court of international trade that cases can't simply be dismissed under I, that it shouldn't be accepting these cases. Okay. Thank you.